UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PAUL SINGLETARY, JR. ,**

    **Plaintiff,**

v.                                                       **Case No: 5:17-cv-119-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff, Paul Singletary, Jr., appeals the administrative decision denying his application for disability insurance benefits and supplemental security income. Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be **AFFIRMED.**

**I.    BACKGROUND**

Plaintiff filed his application for benefits, alleging disability beginning September 5, 2011. (Tr. 269, 271). The claim was denied initially, and upon reconsideration. (Tr. 128, 162–63). At Plaintiff's request a hearing was held, where both Plaintiff, his father, and an impartial vocational expert (VE) testified. (Tr. 99–113). A supplemental hearing was held several months later. (Tr. 84–96). The Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 18–28). Plaintiff's request for review was denied by the Appeals Council (Tr. 1–

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

4), and Plaintiff initiated this action. (Doc. 1). Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, mild neurocognitive disorder, major depressive disorder, and asthma. (Tr. 20).

The ALJ found that the Plaintiff had the residual functional capacity to perform light work. (Tr. 22). The ALJ determined Plaintiff is limited to "simple, routine tasks involving no more than simple work related decisions and few work place changes" as well as "rare interaction with the public and occasional interaction with supervisors and coworkers." *Id.*

Based upon Plaintiff's RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as mail clerk, garment sorter, and newspaper inserter. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### III.   DISCUSSION

On appeal, Plaintiff contends that the ALJ: (1) failed to properly evaluate the medical opinions related to Plaintiff's mental health; and (2) erred in not concluding that he met the listing criteria for cerebral brain trauma.

### A.   The ALJ properly evaluated the medical opinions related to Plaintiff's mental health.

Plaintiff argues that the ALJ's decision to give only some weight to the medical opinions of three psychologists—the consultative examiners, Dr. Gary Kittrell and Dr. Steven Snook, and Plaintiff's treating psychiatrist Dr. Kinglsley Iyanu—is reversible error because all three opinions were consistent with the record and entitled to greater weight.

The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to be given a medical opinion, the regulations establish a set of factors to consider. 20 C.F.R. § 404.1527(c). Those factors are: (1) whether the source examined the claimant; (2) whether the source treated the claimant over a period of time; (3) the extent to which the source's opinion is supported by evidence; (4) the consistency between the opinion and the record as a whole; (5) the specialization of the source; and (6) any other factor brought to the ALJ's attention. *Id.* The ultimate determination of whether the Plaintiff is disabled, however, is reserved for the Commissioner. *Id.* § 404.1527(d)(1).

Treating sources are generally given more weight than non-treating sources because they are likely to be "most able to provide a detailed, longitudinal picture" of the claimant's impairments. *Id.* § 404.1527(c)(2). The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Denomme v. Comm'r of Soc. Sec.*, 518 Fed. App'x 875, 877 (11th Cir. 2013) (citing *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

### 1. Consultative Examiners Dr. Kittrell and Dr. Snook

Dr. Kittrell examined Plaintiff two times, first in early 2011 and again in late 2013. (Tr. 377–84, 484–89). Dr. Kittrell remarked on both occasions that Plaintiff had "below average

general intellectual functioning," but that he should be able to understand basic instructions. (Tr. 384, 489). In the first examination, Dr. Kittrell opined that Plaintiff would have "frequent difficulty dealing effectively with the public [and] getting along with coworkers." (Tr. 384). In the second, he stated that Plaintiff would have moderate difficulty "dealing effectively with the public and interacting with coworkers and supervisors [and] . . . adapting to normal work stressors." (Tr. 489).

Dr. Snook examined Plaintiff once and reviewed Plaintiff's medical records. (1091–1100). He completed a check-box form where he indicated that Plaintiff would have no limitations in following simple instruction but would have marked limitations following complex instructions. (Tr. 1091). Dr. Snook also opined that Plaintiff would have marked difficulty interacting appropriately with the public and responding to changes in the work setting. (Tr. 1092). The ALJ gave these opinion only "some weight." (Tr. 26).[2]

As an initial matter, Plaintiff's RFC is generally consistent with Dr. Snook and Dr. Kittrell's opinion—the RFC limits Plaintiff to "simple, routine tasks involving no more than simple work related decisions and few work place changes." (Tr. 22). The RFC also limits Plaintiff to "rare interaction with public and occasional interaction with supervisors and coworkers." *Id.* Inasmuch as the RFC includes fewer limitations than the consultative examiners' evaluations, the ALJ gave two reasons for discounting their opinions: 1) both doctors were consultative examiners who had no treating relationship with Plaintiff; and 2) their conclusions were based largely on self-

---

[2] The Commissioner states that the ALJ failed to explain the weight given to Dr. Kittrell's opinion and goes on to argue that this "error" was harmless. But the ALJ's order states that the "mental consultative examiners" are being given "some weight" and then cites Dr. Kittrell's opinion and Dr. Snook's opinion. (Tr. 26). While the ALJ did not specifically mention Dr. Kittrell by name, the citation makes clear that the ALJ is referring to the opinions of Dr. Kittrell and Dr. Snook when the ALJ refers to the "mental consultative examiners."

reports and were inconsistent with the other record evidence, which showed "the claimant's mental health was routinely normal." (Tr. 26). Plaintiff takes issue with both reasons.

Plaintiff argues that the ALJ's finding that the two doctors had no treating relationship with Plaintiff was error because Dr. Kittrell examined Plaintiff on more than one occasion, and Dr. Snook conducted an extensive five-hour exam. It is well-established that, in general, the opinion of a one-time examiner is not entitled to great weight. *See Crawford*, 363 F. 3d at 1160. Although Dr. Kittrell did exam Plaintiff on two occasions, the two exams were separated by a period of more than two years. (Tr. 377–84, 484–89). And while Dr. Snook's examination was a five-hour exam, a one-time exam cannot, by definition, provide the "detailed, longitudinal picture" of Plaintiff's condition that would entitled it to greater weight. (Tr. 1094–1100). 20 C.F.R. § 404.1527(c)(2) (describing unique features of treating relationship). Plaintiff has not shown that he had a treating relationship with either doctor. Therefore, Plaintiff has not established that the ALJ erred in determining that the opinions of the consultative examiners were not due the weight accorded a treating source.

In addition, Plaintiff argues that the ALJ erred in determining that the Dr. Snook's and Dr. Kittrell's opinions were inconsistent with other evidence in the record. The ALJ noted that the record showed Plaintiff's "mental health was routinely normal." (Tr. 26). For example, the ALJ observed that the medical evidence showed Plaintiff was regularly alert and oriented to person, place, time, and situation. (Tr. 25–26, 1097, 1100). Plaintiff reported that he did not need help with personal hygiene and was able to attend to his activities of daily living. (Tr. 26, 487, 1097). Plaintiff's depression was "characterized as only mild," and Plaintiff regularly reported feeling good, having a cooperative and alert mood, and being able to concentrate on things. (Tr. 26, 884, 1117, 1126). To the extent that Dr. Kittrell and Dr. Snook's opinions suggest greater limitations

than those found in Plaintiff's RFC, Plaintiff has not shown that the ALJ's determination that their opinions were inconsistent with the other medical evidence lacks support.

Finally, Plaintiff points out that the ALJ appears to have misinterpreted the testimony of Plaintiff's father. At the hearing, Plaintiff's father testified that some of his friends (meaning, friends of Plaintiff's father) at the VFW and American Legion had tried to help Plaintiff find a job. (Tr. 108). However, the ALJ seems to have misinterpreted this testimony to mean that Plaintiff had friends at the VFW and American Legion. The ALJ stated, "Dr. Snook's determination that the claimant was markedly limited in his ability to interact with others was inconsistent with the fact he worked with others in the past and admittedly had several friends. His father testified he had friends at the VFW and American Legion." (Tr. 26).

While the ALJ may have been wrong to conclude that Plaintiff had friends at the VFW and the American Legion, the ALJ was correct that Plaintiff worked at previous jobs that required interactions with coworkers and supervisors, and there was no evidence of difficulties interacting with these coworkers. (Tr. 108). The ALJ was also correct that Plaintiff's father testified that Plaintiff told his father that Plaintiff had several friends who lived in the area—although Plaintiff's father doubted this claim. (Tr. 108). In addition, the father's testimony was but one example of evidence that was inconsistent with Dr. Snook's opinion. (Tr. 26). The ALJ noted that other examining physicians consistently remarked that Plaintiff was frequently cooperative during treatment sessions and had an appropriate mood and affect. (Tr. 26, 993, 1068).

Therefore, Plaintiff has not demonstrated that the ALJ erred in determining that the opinions of Dr. Kittrel and Dr. Snook were entitled to only some weight.[3]

---

[3] Plaintiff also points out that the ALJ's order mistakenly refers to Plaintiff as having a high-school education when in fact he left school after the ninth grade. (Tr. 27, 306). However, Plaintiff has not explained how this mistake affected the ALJ's decision. At the hearing, Plaintiff's attorney explained that Plaintiff had an eighth-grade education, and the VE considered Plaintiff's education in finding that Plaintiff

### 2.  Plaintiff's Treating Psychologist Dr. Iyanu

Plaintiff argues that the opinion of Dr. Iyanu was entitled to controlling weight under 20 C.F.R. § 404.1527(a)(2) because Dr. Iyanu was Plaintiff's treating physician. Dr. Iyanu completed a check-box mental capacity assessment on April 23, 2015 and opined that Plaintiff had marked limitations in his ability to work at a sustained and persistent level and would need to be absent from work frequently due to his limitations. (Tr. 1027–28). Dr. Iyanu also opined that Plaintiff's moderate or marked limitation related to social interactions and adapting to changes in the work setting. (Tr. 1007–29).

First of all, as the Commissioner points out, when Dr. Iyanu conducted his evaluation in April 2015, Dr. Iyanu had only been treating Plaintiff for approximately one month. (Tr. 1008–11). Plaintiff continued to see Dr. Iyanu through August 2015, but Dr. Iyanu reported that Plaintiff "seems much improved" and was doing well on his medication. (Tr. 1126–28).

Second, the ALJ observed that Dr. Iyanu's opinion was inconsistent with other medical evidence that, according to the ALJ, showed that Plaintiff's "mental health was routinely normal." (Tr. 27). The Social Security regulations make clear that a treating physician's opinion is only entitled to controlling weight if it is "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). The ALJ's order cites treatment records showing Plaintiff had no difficulties concentrating, had an alert and cooperative mood, and felt good. (Tr. 26, 1068, 1117, 1126, 1129). Plaintiff has failed to meet his burden to establish that the ALJ's determination that Dr. Inyanu's opinion was inconsistent with the other record evidence was error.

---

was capable of working a mail clerk, garment sorter, and newspaper inserter—all of which are unskilled jobs. (Tr. 87, 95).

**B.   The ALJ did not err in concluding that Plaintiff did not meet his burden to establish that he met the listing criteria for cerebral brain trauma.**

Plaintiff argues that he meets the requirements of listing 11.18 for cerebral brain trauma. 20 C.F.R. Part 404, Subp. P, Appx. 1 (2016). The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). Plaintiff bears the burden of proving he meets a listing. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Although listing 11.18 has since been amended to include separate criteria, at the time of the decision in this case, the listing for cerebral brain injury directed the reviewer to consider listings 11.02, 11.03, 11.04, and 12.02 as applicable. *See* 20 C.F.R. Part 404, Subp. P, Appx. 1 (2016). Plaintiff argues that he meets 12.02.

The ALJ did not specifically consider listing 12.02 in her order—although the order states that the ALJ did consider "all other relevant listings."[4] (Tr. 21). The ALJ did, however, explicitly consider listing 12.04, affective disorders, which includes similar paragraph B and C criteria.

---

[4] As the Commissioner points out, Plaintiff did not argue at the hearing that he met listing 12.02, instead arguing only that he met 12.04. (Tr. 88).

Assuming, for the sake of argument, Plaintiff meets the paragraph A criteria of 12.02, the Court will consider his argument that the ALJ erred in finding he did not meet either the paragraph B or C criteria.[5]

To meet the paragraph B criteria, Plaintiff must establish either "marked" difficulties regarding activities of daily living; social functioning; concentration, persistence, and pace; or repeated episodes of decomposition. The ALJ found, however, that Plaintiff had only mild restrictions in these areas and no episodes of decomposition. (Tr. 21–22).

Plaintiff argues the ALJ's findings are not supported by the record. But the ALJ's order cites evidence that Plaintiff is able to perform daily activities, such as cleaning and caring for pets, to maintain relationships with friends and family members, and to prepare meals and pay bills. (Tr. 21–22, 311–13, 487, 1133). This Court's review is limited to determining whether substantial evidence exists to support the ALJ's decision not to reweigh conflicting evidence. *See Crawford v. Comm'r. of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) ( "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence."). Therefore, Plaintiff has failed to meet his burden to establish error on this point.

Plaintiff also argues that he meets the paragraph C criteria, which require a finding of either: (1) repeated episodes of decomposition; or (2) a likelihood of decomposition in the event of even a minimal increase in mental demands or change in the environment; or (3) a one-year history of being unable to function outside of a highly supportive living arrangement. 20 C.F.R. Part 404, Subpart P, Appx. 12.02, 12.04 (2016).

---

[5] Both 12.02 and 12.04 require Plaintiff to establish that he meets both the paragraph A criteria and either the paragraph B or the paragraph C criteria.

The ALJ found, however, that none of these three criteria were present for Plaintiff. (Tr. 22). In support of this finding, the ALJ pointed out that Plaintiff had no record of decomposition; he is able to shop in store and pay bills; and he is able to care for himself and his animals. (Tr. 22, 311–15, 328). In response, Plaintiff states that any increase in mental demands or change in the environment would cause him to decompensate. However, Plaintiff relies again on the opinions of Dr. Snook and Dr. Kittrel, which the ALJ found were entitled to only some weight. (Tr. 384, 489, 1100). Moreover, while the two doctors note various degrees of difficulty related to social interactions and adaptation, and Dr. Snook opined that there was a risk of decomposition "under stressful conditions," neither doctor opined that Plaintiff had a likelihood of decomposing given only a minimal change in circumstances. (Tr. 384, 489, 1100).

Thus, Plaintiff has failed to meet his burden to establish that he meets any of the listing criteria. The ALJ's decision is due to be affirmed on this point as well.

Lastly, Plaintiff argues that the Appeals Council erred in not considering additional evidence he submitted to the Council after the ALJ's decision. Under the regulation applicable at the time of the decision, the Council was required to consider additional evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (2016). Here, the Council determined that the evidence submitted by Plaintiff related to the period after the ALJ's decision—and thus was not chronologically relevant. (Tr. 2). *See Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322–23 (11th Cir. 2015) (reversing where Appeals Council failed to consider evaluations that while conducted after the ALJ's decision, related back to the period before the decision in part because the evaluator considered evidence from that period).

None of the records submitted by the Plaintiff pre-date the ALJ's decision in November of 2015. (Tr. 49–83). The records consist mainly of notes from Plaintiff's treatment for chronic kidney disease, including various test results and treatment notes. The records do not contain opinions from the medical sources about Plaintiff's ability to work, and Plaintiff has not pointed to anything in the record that indicates that the physicians considered Plaintiff's past condition. *See Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1309–10 (11th Cir. 2018) (affirming Appeals Council's decision not to consider new medical records where there was no indication doctors considered past medical records). As a result, Plaintiff has not demonstrated that the Appeals Council erred in not considering the records.

Finally, even if the records related back to the earlier time period, the records are duplicative of information already considered by the ALJ, and thus there is no reasonable probability that these records would change the result of this case. *See id.* at 1310 (refusing to remand where additional evidence did not have a reasonable probability of changing the result).

### IV.    RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g);

**DONE and ORDERED** in Ocala, Florida on May 2, 2018.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties